IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| CHILD EVANGELISM FELLOWSHIP OF HAWAII, INC., <br><br>         Plaintiff, <br><br>    vs. <br><br> HAWAI‘I STATE DEPARTMENT OF EDUCATION, *et al.*, <br><br>         Defendants. | Civil No. 24-00034 MWJS-WRP <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

### **INTRODUCTION**

Before the Court is Plaintiff Child Evangelism Fellowship of Hawaii, Inc.'s (CEF) Motion for Preliminary Injunction.  ECF No. 4.  In it, CEF argues that Defendants—the Hawai‘i State Department of Education (DOE) and certain state education officials—have discriminated against it on religious grounds.  CEF also argues that certain state administrative rules are unconstitutional on their face and as applied.

Defendants respond that DOE-wide injunctive relief is, for the most part, unnecessary.  They point out that most DOE schools are not discriminating against CEF.  And they argue that it would be inappropriately intrusive to compel Defendants to modify their administrative rules.  But Defendants have otherwise

declined to contest CEF's arguments.  They explicitly concede that a preliminary injunction is warranted in at least one respect.  And they effectively concede—by failing to contest—that it is appropriate in certain other respects.

The Court agrees with Defendants that DOE-wide relief (with one important exception) is not appropriate.  The Court also agrees that it is not necessary to require Defendants to modify any of their rules.  But given Defendants' concessions in the face of CEF's remaining arguments, the Court GRANTS CEF's motion for a preliminary injunction to the extent and on the terms set forth below.

## <u>BACKGROUND</u>

### A.    CEF's Verified Complaint

CEF is a Christian non-profit organization that operates Good News Clubs, which are after-school enrichment programs that provide religious instruction and other activities.  ECF No. 1, at PageID.5-6 (Compl. ¶¶ 15-16).  Good News Clubs meet on public school campuses and make use of available school facilities.  And these clubs, according to CEF, have had a long and successful history in Hawai'i. *Id.* at PageID.12 (¶ 35) ("Prior to the outbreak of COVID-19, CEF had active Good News Clubs in over a dozen Hawaii schools . . . ."); *id.* (¶ 36) (noting CEF's "history of enriching after-school programs for Hawaii students").

As alleged in its verified complaint, however, things began to change after the COVID-19 pandemic, at least in some of Hawaii's public schools.  In

particular, CEF alleges that for the last two years, its requests for facility use have been denied and delayed at certain public elementary schools within four Complex Areas (which are public schools within a geographic area under the supervision of a single superintendent):

(1) Kalihi Waena Elementary School, which is within the Farrington-Kaiser-Kalani Complex Area, *id.* at PageID.20-21 (¶¶ 67-71);

(2) Nuʻuanu Elementary School and Lincoln Elementary School, both of which are within the Kaimuki-McKinley-Roosevelt Complex Area, *id.* at PageID.15-18 (¶¶ 47-61);

(3) Waimea Elementary School and Kohala Elementary School, both of which are within the Honokaa-Kealakehe-Kohala-Konawaena Complex Area, *id.* at PageID.18-20 (¶¶ 62-66); *id.* at PageID.21 (¶¶ 72-73);[1] and

(4) Pearl City Elementary School, which is within the Pearl City-Waipahu Complex Area, *id.* at PageID.21-22 (¶¶ 74-75).

These denials are unconstitutional, CEF contends, because these six schools have denied CEF's facility use applications while granting, in many cases, the applications of similarly situated nonreligious groups.  Moreover, CEF contends

---

[1]     The complaint, at one point, states that Kohala Elementary School is within the Kaimuki-McKinley-Roosevelt Complex Area on Oʻahu, but the Court concludes that this is simply a scrivener's error.  The complaint attaches CEF's facility use access request as Exhibit 24, and that exhibit makes clear that CEF's allegations are addressed to Kohala Elementary School on Hawaiʻi Island.

that in at least two instances, school officials openly indicated that they were

denying CEF's applications because of the religious nature of Good News Clubs;

for example, the principal of Nuʻuanu Elementary School denied a facility use

application on the grounds that DOE policy prohibited "[p]rayer and other

religious observances . . . organized or sponsored by schools," particularly "where

students are in attendance or can observe the activities."  ECF No. 1-8, at

PageID.103 (internal quotation marks omitted).

      According to CEF, this religious discrimination has been facilitated by three

features of Hawaii's facility use policies:  they contain no criteria to guide school

officials in deciding which facility use requests to approve, they lack reasonable

timeframes for making decisions, and they do not require schools to provide

explanations for their denials of facility use requests.  As a consequence, schools

within the four named Complex Areas have arbitrarily denied CEF's facility use

requests on some occasions and have arbitrarily delayed decisions in others.  More

abstractly, CEF argues that the failure to provide these procedural protections itself

violates the First Amendment, and that this is a facial flaw in the DOE's

administrative rules.

      CEF raises a second facial argument about Hawaii's facility use policies:

that they are discriminatory on their face because they classify religious groups as

"Type III" users, even though similarly situated nonreligious groups would be

classified as "Type II" users.  This matters, CEF points out, because Type II users are allowed to use facilities for free, whereas Type III users are required to pay a rental fee.  *See* Hawaiʻi Administrative Rules § 8-39-5(c) (1984).  Accordingly, even when CEF's facility use requests are granted, CEF is *still* discriminated against because it must pay for the use, even though similarly situated nonreligious groups would use the facilities at no cost.

In light of the foregoing, CEF seeks, among other things, "a judgment declaring Defendants' discriminatory use policies unconstitutional, both on their face and as applied, under the Free Speech, Establishment, and Free Exercise Clauses of the First Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment."  ECF No. 1, at PageID.3 (Compl. ¶ 2).  And CEF seeks that relief against the following Defendants:  (1) the DOE; (2) Keith Hayashi, Superintendent of Education; (3) Rochelle Mahoe, Superintendent of the Farrington-Kaiser-Kalani Complex Area; (4) Linell Dilwith, Superintendent of the Kaimuki-McKinley-Roosevelt Complex Area; (5) Janette Snelling, Superintendent of the Honokaa-Kealakehe-Kohala-Konawaena Complex Area; and (6) Richard Fajardo, Superintendent of the Pearl City-Waipahu Complex Area.  Each of the individual Defendants is named in their official capacity.[2]

---

[2]      CEF's complaint details other "historical denials" of its requests for facility use in certain Complex Areas.  ECF No. 1, at PageID.12-14 (¶¶ 35-43).  But those

### B.    CEF's Motion for a Preliminary Injunction

Through the present motion, CEF also seeks the relief of a preliminary injunction.  CEF's motion papers reassert the arguments in its verified complaint, but add that without the requested relief, CEF's constitutional rights would continue to be infringed while this lawsuit is pending.

Defendants, represented by the Attorney General of Hawaiʻi, filed a single joint response.  ECF No. 31.  Their principal contention is that "the issuance of [a] DOE-wide injunction" is not necessary because *some* DOE schools have granted CEF's facility use applications.  ECF No. 31-1, at PageID.353; *see also id.* at PageID.350 (listing applications that were granted between 2022 and 2024).  But Defendants do not meaningfully respond to CEF's argument that *other* DOE schools—in particular, certain schools in the four Complex Areas overseen by Defendants Mahoe, Dilwith, Snelling, and Fajardo—have denied or delayed decision on their requests.  Moreover, Defendants do not meaningfully respond to CEF's argument that while its applications at these other schools were denied, similarly situated nonreligious organizations had access to some of these schools' facilities.

---

denials all predate the COVID-19 pandemic, and CEF does not allege that denials in those schools are ongoing.

Defendants do point out that some of these schools gave nondiscriminatory reasons for their denials. *Id.* at PageID.352-54. But CEF itself acknowledges as much. CEF's contention (which it backs up with specific examples) is that similarly situated nonreligious organizations were allowed to use school facilities in those same time periods, which would call into question whether the stated reasons were pretextual. As to that critical contention, Defendants say only that "CEF is not in a position to know how many times other groups' applications to use DOE facilities were either approved or disapproved." *Id.* at PageID.354. But while it is certainly true that Defendants are in a better position to know whether the reality is more complicated than CEF's examples would suggest, Defendants have opted—at least at this preliminary injunction stage—not to offer any information to rebut CEF's claims. What is more, Defendants essentially concede that the principal of Nuʻuanu Elementary School admitted that the denial of CEF's use application was because of the religious nature of the Good News Clubs; Defendants offer only that this "appear[s] to be based on a misinterpretation of DOE facilities use policies." *Id.* at PageID.353. And Defendants offer no assurances that this misinterpretation of DOE policies has been addressed.

Defendants likewise offer no response to CEF's argument that the facility use policies—given their lack of decision-making criteria, the absence of reasonable timeframes for making decisions, and the failure to require explanations

7

of denials—have made it possible for certain DOE schools to deny or delay

decisions on applications on discriminatory grounds.  Defendants offer no response

to CEF's argument that the failure to provide these procedural protections facially

violates the First Amendment.  And Defendants offer no response to CEF's

argument that it is unconstitutionally discriminatory to classify CEF's Good News

Clubs as a Type III user when similarly situated nonreligious groups are classified

as Type II.

Given Defendants' apparent concessions, the Court issued an order

identifying the arguments Defendants appeared not to dispute and calling for the

parties to discuss the appropriate scope and content of a possible preliminary

injunction.  ECF No. 33.  In particular, the Court called on CEF to:

> (a)    propose objective criteria to evaluate CEF's use applications;

> (b)    propose reasonable time limits for the evaluation of CEF's use
> applications;

> (c)    discuss whether CEF's Good News Clubs should be classified
> as Type II users freed from the burden of paying rental fees; and

> (d)    propose precise language for a preliminary injunction that
> includes any other relief CEF deems necessary.

*Id.* at PageID.424.

In response to the order, CEF proposed language for a preliminary injunction that addressed each of these issues.  ECF No. 34.  Defendants filed a supplemental brief that accepted some of CEF's proposals but took issue with others.  ECF No. 36.  (In so doing, Defendants did not dispute the Court's understanding of their earlier submission as having largely conceded that preliminary injunctive relief is appropriate.)  The Court then ordered the parties to confer and submit a joint statement identifying areas of agreement and disagreement as to the possible contents of a preliminary injunction.  ECF No. 37. The parties submitted that joint statement on May 15, 2024, ECF No. 38, and a hearing was held on June 4, 2024, ECF No. 41.

## DISCUSSION

### A.    Preliminary Injunctive Relief Is Warranted Here

The threshold question is whether a preliminary injunction is appropriate, and CEF bears the burden of establishing that it is.  To make the required showing, CEF must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) a balance of the equities favoring such relief, and (4) a showing that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In this case, CEF has offered colorable factual and legal grounds for the relief it seeks, and Defendants—represented by competent counsel—have chosen

9

largely not to respond to them.  With CEF's colorable arguments on one side, and the lack of any meaningful contestation on the other, the Court can readily find that CEF has met its burden on each of the *Winter* factors.

A brief summary of CEF's contentions will suffice to bear out this point.  On the likelihood of success on the merits, CEF argues that Defendants are unconstitutionally discriminating against it by classifying its Good News Clubs as rental-fees-paying Type III users.  This is a strong argument, and Defendants implicitly concede that it is correct.  *See* ECF No. 36, at PageID.455 ("Going forward, Defendants agree to treat CEF as a Type II user.").  CEF further argues that its applications for facility use have been denied at certain schools despite the approval of requests from similarly situated nonreligious groups; this argument has force, though it is heavily fact dependent.  By declining to contest CEF's asserted facts, Defendants have effectively conceded the point.  Finally, CEF's arguments that the facility use policies are unconstitutional because they lack decision-making criteria, have no deadlines, and fail to require written explanations are at least colorable in light of the authorities CEF cites; here again, Defendants do not dispute, and therefore concede—at least at this stage—that this argument is persuasive.

On the likelihood of irreparable harm, CEF argues, without meaningful contradiction, that its facility use requests will continue to be unconstitutionally

denied and delayed at certain schools in the four Complex Areas headed by

Defendants Mahoe, Dilwith, Snelling, and Fajardo, unless interim equitable relief

is granted.  And it cites, without contradiction, authorities holding that "a colorable

First Amendment claim is irreparable injury sufficient to merit the grant of relief."

ECF No. 4, at PageID.272 (cleaned up) (quoting *Doe v. Harris*, 772 F.3d 563, 583

(9th Cir. 2014)).

As for the final two *Winter* factors (that is, the balance of equities and the

public interest), CEF argues, again without serious contradiction, that in cases

involving the government, "the last two *Winter* factors merge" because "it is

always in the public interest to prevent the violation of a party's constitutional

rights."  *Id.* at PageID.273 (quoting *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir.

2023)).

For all of these reasons, the Court concludes that CEF has met its burden of

showing that preliminary injunctive relief is warranted.

### B.    The Scope of the Preliminary Injunction

That leaves the question of what a preliminary injunction should look like in

this case.

"Crafting a preliminary injunction is an exercise of discretion and judgment,

often dependent as much on the equities of a given case as the substance of the

legal issues it presents."  *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571,

579 (2017).  The purpose of "interim equitable relief is not to conclusively determine the rights of the parties," but rather "to balance the equities as the litigation moves forward." *Id.* at 580.  In doing so, "a court 'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case.'" *Id.* (quoting 11A Charles A. Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2947 (3d ed. 2013)).

Moreover, the Court must be especially cautious in considering whether to grant a "mandatory" injunction that would require Defendants to engage in affirmative conduct—as opposed to a "prohibitory" injunction that would merely preserve the status quo by prohibiting conduct.  That is because Ninth Circuit precedent requires this Court to subject a request for a mandatory injunction "to a higher standard" under which an injunction will issue only if "'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).[3]

---

[3]    One might "question[] whether the line between mandatory and prohibitory injunctions is meaningful," but the Court nonetheless is "bound by circuit precedent to discern the line" between them "as best [it] can." *Hernandez*, 872 F.3d at 998.

With these principles in mind, the Court now turns to the question of what the contours of the preliminary injunction should be in this case.

1.  The threshold question here is a question of "who":  who should be bound by the Court's order.  The parties do not dispute that, to the extent relief must be implemented at the school level, the preliminary injunction may apply to the Superintendents of the respective Complex Areas.

The parties sharply disagree, however, about how to effectuate any state-wide relief.  CEF suggests that the DOE itself should be covered, as well as Defendant Hayashi, the Superintendent of Education.  Defendants respond that it would violate the Eleventh Amendment to the U.S. Constitution to impose injunctive relief against the DOE itself, and they further argue that there is simply no reason to impose any remedy against Defendant Hayashi, who they say is not directly involved in granting or denying facility use requests.

The Court agrees with Defendants that it is unnecessary to impose any injunctive relief directly against the DOE.  Putting aside the question of whether it is even possible to impose such relief without the DOE's consent, any necessary state-wide relief can be obtained by enjoining Defendant Hayashi.[4]

---

[4]     At the hearing on CEF's motion, counsel for CEF agreed that statewide injunctive relief could be accomplished by enjoining Defendant Hayashi, and that it is therefore unnecessary to take the additional step of enjoining the DOE itself.

2.  That leads to the question of whether statewide relief is called for.  In one respect, the Court concludes that it is:  Defendants themselves have conceded that preliminary injunctive relief is appropriate to require them to treat CEF's Good News Clubs as Type II users (not subject to rental fees), rather than Type III users (subject to rental fees).  To effectuate that injunctive remedy, it is necessary to apply it statewide, as Good News Clubs across the state are currently being classified as Type III users.  Accordingly, the Court will impose a preliminary injunction on Defendant Hayashi to the limited extent that he is required to ensure that CEF's Good News Clubs are treated as Type II users anywhere throughout the State of Hawaiʻi.  Put differently, using CEF's preferred verbiage, the Court will order that Defendant Hayashi, and the other individual Defendants, classify CEF in the same category as other similarly situated nonprofit organizations that provide educational and recreational activities in DOE schools.

But the Court concludes that no further statewide relief is warranted, at least at this stage.  Although CEF argues that Defendants' administrative rules are unconstitutional because they lack decision-making criteria, timeframes for making decisions, and a requirement for providing reasons for denials, the Court concludes that CEF has not made a showing that the harms from these allegedly unconstitutional provisions is currently palpable anywhere other than in certain elementary schools within the four Complex Areas headed by Mahoe, Dilwith,

Snelling, and Fajardo.  While it is true that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)), it is also the case that CEF has not yet made a factual showing that any schools outside of the six elementary schools specifically identified in the verified complaint are, in fact, denying or unreasonably delaying decisions on CEF's facility use requests.  Especially given the high standard that applies to mandatory injunctions, the Court concludes that it is appropriate, at this time, to limit preliminary injunctive relief to the specific schools in which CEF has demonstrated that the lack of procedural protections have caused CEF tangible harm.[5]  It follows that a requirement to provide procedural protections within those schools can be effectuated by applying the preliminary injunction to these Complex Area Superintendents specifically, and that this aspect of the preliminary injunction need not extend to Superintendent Hayashi.

3.  The final question is a question of "what":  what should the preliminary injunction require of individuals who are enjoined.

---

[5]      This decision about the scope of the remedy is, of course, without prejudice to CEF seeking to make a showing, in a future submission, that additional DOE schools are failing to provide timely decisions—or to CEF seeking to make a broader showing that there is such a systematic failure to provide timely decisions across DOE schools that system-wide procedural relief is needed.

To begin with, the Court generally agrees with CEF's suggested injunctive language from paragraph (A) of its proposal.  ECF No. 34.  This language would require Defendants to classify CEF the same as similarly situated nonprofit organizations—which, under current rules, would mean treating CEF as a Type II user.  The Court will adopt, with some minor revisions, this aspect of CEF's proposal and apply it to Defendants Hayashi (to ensure statewide effect), Mahoe, Dilwith, Snelling, and Fajardo.

The Court also agrees with the language in paragraphs (B) and (C) of CEF's proposal, which would allow CEF's Good News Clubs to access school facilities on an equal basis with similarly situated nonprofit organizations, including but not limited to the Boy Scouts, Girl Scouts, Cub Scouts, and Girls on the Run.  But CEF's submissions have, to date, only demonstrated that there is an active likelihood of irreparable injury caused by unequal treatment at four schools: Kalihi Waena Elementary School, Nuʻuanu Elementary School, Lincoln Elementary School, and Waimea Elementary School.  In its verified complaint, CEF alleges that these four schools denied its facility use applications while allowing similarly situated nonprofit organizations to use school facilities.  *See* ECF No. 1, at PageID.20 (¶¶ 68-69) (application denied at Kalihi Waena Elementary "without any explanation," while allowing "Cub Scouts to use the school facilities"); *id.* at PageID.16 (¶¶ 49-51) (application denied at Nuʻuanu

Elementary "because [CEF] was religious" while allowing "at least ten similarly situated, non-religious after-school programs to use school facilities"); *id.* at PageID.17-18 (¶¶ 55-57) (applications denied at Lincoln Elementary because the "school administration did not like the idea of a Good News Club" and because there were already "too many organizations" on campus); *id.* at PageID.19 (¶¶ 63-64) (application denied at Waimea Elementary because "the facility did not have any available classroom space," while allowing "a troop of Girl Scouts of Hawaiʻi to use the school building").[6]  These four schools fall under the supervisions of Defendants Mahoe, Dilwith, and Snelling.  The Court will therefore apply this aspect of the preliminary injunction to these three defendants with respect to these four schools.

---

[6]     Lincoln Elementary and Waimea Elementary denied CEF's applications because they purported to lack space.  Under some circumstances, that would be an adequate reason for a denial.  For example, if a school only had ten available classrooms, and if CEF applied for facility use after the tenth classroom was assigned, a school could reasonably deny CEF's application for lack of space, even though similarly situated organizations had access to the facilities.  Here, however, CEF alleges that the denials for lack of space are pretextual.  Even though CEF's application at Lincoln Elementary was purportedly denied because they were already "hosting about 10 afterschool programs," ECF No. 1-12, at PageID.162, the principal later said that the school "did not like the idea" of CEF's presence on campus, ECF No. 1, at PageID.18 (¶ 57).  And after CEF's application was denied at Waimea Elementary for lack of "available classroom space," ECF No. 1-16, at PageID.176, CEF said it would be willing to use "[a]ny indoor or outdoor space," ECF No. 1-19, at PageID.179.  But Waimea Elementary never responded.  These allegations tend to suggest that the lack-of-space rationale was pretext for discrimination, and Defendants do not meaningfully argue otherwise.

The Court will not extend the injunction to the other two schools, however. Although the verified complaint specifically discusses recent denials at Pearl City Elementary School and Kohala Elementary School, it does not allege that similarly situated organizations had access to facilities at these schools while CEF did not.[7] Without such evidence or allegations, CEF has not met its burden of showing a likelihood of irreparable injury stemming from disparate treatment at these two schools. For that reason, the Court will not extend this aspect of the remedy to Defendant Fajardo (whose Complex Area includes Pearl City Elementary) and to Defendant Snelling with respect to Kohala Elementary (although Defendant Snelling will still be bound with respect to Waimea Elementary). Moreover, because CEF has not shown that there is a likelihood of harm statewide, the Court will not extend this aspect of the injunction to Defendant Hayashi.

The Court generally agrees with the aims of CEF's suggested injunctive language in paragraph (E) of its proposal, which would require timely decisions on facility use requests within fourteen days and timely decisions on appeals within

---

[7]     The reason for the denial of CEF's application at Pearl City Elementary School appears to be that there were "too many afterschool planned activities and classroom uses to accommodate additional facility use." ECF No. 1-26, at PageID.228. This might suggest that similarly situated organizations had access to school facilities, even while CEF's request was denied. But as discussed in the preceding footnote, space constraints may well be a legitimate, nondiscriminatory reason for denying a facility use application, and CEF has not demonstrated that this was pretextual.

ten days.  As discussed at the hearing on CEF's motion, and with agreement of all

parties' counsel, the Court will modify these dates to require initial decisions

within twenty-one days and an appellate decision within fourteen days, and the

Court will add language allowing for the possibility of extending these timeframes.

The Court also agrees with CEF that any denial of a request should be

accompanied by a written explanation outlining the specific reasons for the denial,

and the Court will include language to this effect (and language requiring schools

to do more than provide mere boilerplate explanations).

But while the Court generally agrees with the goals of the language in

paragraph (E) of CEF's proposal, it does not agree that it should accomplish the

aims of those paragraphs by ordering Defendants to modify or amend their facility

use policies.  CEF has shown the need for procedural protections at four schools,

where CEF is *still* waiting for decisions on its facility use applications and/or

appeals.  *See* ECF No. 1, at PageID.21 (¶ 71) (Defendants "never responded" to

appeal at Kalihi Waena Elementary); *id.* at PageID.17 (¶ 53) (CEF "never received

a response" to appeal at Nuʻuanu Elementary); *id.* at PageID.18 (¶¶ 59, 61) (CEF

"never received a response" to application or appeal at Lincoln Elementary); *id.* at

PageID.20 (¶ 66) (Defendants "never responded" to application at Waimea

Elementary).  Under CEF's legal theories—which, again, are not meaningfully

contested by Defendants—these delays injure CEF's First Amendment rights.  It is

therefore appropriate for a preliminary injunction to afford CEF procedural

protections at these four schools:  Kalihi Waena Elementary School, Nuʻuanu

Elementary School, Lincoln Elementary School, and Waimea Elementary School.

The Court will apply the preliminary injunction to the Superintendents whose

Complex Areas include these four schools:  Defendants Mahoe, Dilwith, and

Snelling.

 But CEF has not made a similar showing for Kohala Elementary School and

Pearl City Elementary School.  While both schools denied CEF's use applications,

they did so in a relatively timely manner (a little over a month at Kohala

Elementary, and just two days at Pearl City Elementary), and CEF did not appeal

either of those denials.  *See id.* at PageID.21-22 (¶¶ 72-75).  CEF has therefore not

shown that there is a risk of irreparable injury at Kohala Elementary or Pearl City

Elementary absent further procedural protections.  The Court therefore concludes

that the order need not extend to these two schools.  Because irreparable harm can

be averted by a preliminary injunction providing procedural protections at the four

identified schools, the Court additionally concludes that ordering a reworking of

facility use policies statewide is not justified by the balance of equities.[8]

---

[8] At the hearing on CEF's preliminary injunction, CEF agreed that relief could
be provided without ordering the reworking of state rules.

Furthermore, the Court concludes that if these procedural requirements are in place with respect to the four identified schools, it is not necessary, at this stage, to require Defendants to develop criteria for making decisions, as CEF requests in paragraph (D) of its proposal.  Even without any such criteria, timely denials with written explanations can be subjected to further judicial review as needed.

4.  Two final housekeeping matters remain.  First, consistent with Rule 65(d)(2) of the Federal Rules of Civil Procedure, the Court's preliminary injunction will extend not only to the relevant individual Defendants, but also to "the following who receive actual notice of it by personal service or otherwise": the parties' officers, agents, servants, employees, and other persons who are in active concert or participation with any aforementioned person.[9]

Second, the Court does not order any security to be given under Rule 65(c). Under that rule, this Court has discretion to determine "the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (cleaned up).  And here, Defendants do not ask for security.  Given Defendants' silence, and given that the circumstances of this case do not obviously suggest that a bond would be appropriate, the Court declines to impose one.

---

[9]     Rule 65(d)(2)(B) also authorizes a preliminary injunction to extend to the "attorneys" of the parties, but the Court finds no basis to do so at this time.

## CONCLUSION

For the foregoing reasons, the Court GRANTS CEF's Motion for

Preliminary Injunction.

## PRELIMINARY INJUNCTION

The Court hereby ORDERS the following:

A.    Defendants Keith Hayashi, Rochelle Mahoe, Linell Dilwith, Janette

Snelling, and Richard Fajardo; the officers, agents, servants, and employees of

these Defendants; and other persons who are in active concert or participation with

any of the foregoing, are hereby directed to provide Plaintiff Child Evangelism

Fellowship of Hawaii, Inc. (CEF) the same classification, in the same category, as

other similarly situated nonprofit organizations providing community educational

and recreational activities to students in Defendants' schools, for purposes of

determining CEF's entitlement to access Defendants' facilities under Hawaiʻi

Administrative Rules (HAR) §§ 8-39-3 and 8-39-5;

B.    Defendants Rochelle Mahoe, Linell Dilwith, and Janette Snelling; the

officers, agents, servants, and employees of these Defendants; and other persons

who are in active concert or participation with any of the foregoing, are hereby

directed to provide CEF access to the facilities at Kalihi Waena Elementary School

(for Defendant Mahoe), Nuʻuanu Elementary School (for Defendant Dilwith),

Lincoln Elementary School (for Defendant Dilwith), and Waimea Elementary

School (for Defendant Snelling) on an equal basis with similarly situated nonprofit organizations, including but not limited to the Boy Scouts, Girl Scouts, Cub Scouts, and Girls on the Run, regardless of the classification type under HAR §§ 8-39-3 and 8-39-5;

C.     Defendants Rochelle Mahoe, Linell Dilwith, and Janette Snelling; the officers, agents, servants, and employees of these Defendants; and other persons who are in active concert or participation with any of the foregoing, are hereby directed to provide CEF equal access for its after-school Good News Club program at Kalihi Waena Elementary School (for Defendant Mahoe), Nuʻuanu Elementary School (for Defendant Dilwith), Lincoln Elementary School (for Defendant Dilwith), and Waimea Elementary School (for Defendant Snelling), such that Defendants:

1.     must provide CEF equal access to available spaces in Defendants' facilities, whether classroom, cafeteria, or other available indoor spaces, that are made available to other similarly situated nonprofit organizations providing community educational and recreational activities;

2.     must provide CEF equal access to available benefits in Defendants' facilities that are made available to other similarly situated nonprofit organizations providing community educational and recreational activities;

3.      must provide CEF equal access to available spaces in Defendants' facilities at the same time periods that are made available to other similarly situated nonprofit organizations providing community educational and recreational activities; and

4.      must provide CEF access to Defendants' facilities on an equal basis concerning fees charged, if any, whether rental fees, service charges, utility charges, or custodial charges outlined in HAR § 8-39-5.

D.      Defendants Rochelle Mahoe, Linell Dilwith, and Janette Snelling; the officers, agents, servants, and employees of these Defendants; and other persons who are in active concert or participation with any of the foregoing, are hereby directed to provide CEF timely decisions on its applications to use facilities at Kalihi Waena Elementary School (for Defendant Mahoe), Nuʻuanu Elementary School (for Defendant Dilwith), Lincoln Elementary School (for Defendant Dilwith), and Waimea Elementary School (for Defendant Snelling) and CEF's appeals of any adverse determinations, as well as to provide CEF written responses outlining the specific reasons for any denial of a use application at these four schools as follows:

1.      Whenever CEF submits an application for a period of use not exceeding twelve consecutive months at Kalihi Waena Elementary School, Nuʻuanu Elementary School, Lincoln Elementary School, or Waimea Elementary

24

School, the relevant school's principal or designee shall approve or disapprove the application within a period not to exceed twenty-one (21) days from the submission of the written application;

2.      If any of CEF's applications for use of school buildings, facilities, or grounds at Kalihi Waena Elementary School, Nuʻuanu Elementary School, Lincoln Elementary School, or Waimea Elementary School are denied, and if CEF appeals that denial decision, the relevant district superintendent shall consider an appeal and issue a decision on the appeal within a period not to exceed fourteen (14) days from the receipt of the appeal;

3.      If the school principal, designee, or district superintendent of Kalihi Waena Elementary School, Nuʻuanu Elementary School, Lincoln Elementary School, or Waimea Elementary School determines that exigent circumstances require an extension of the timeframes for deciding CEF's facility use application or CEF's appeal, the school principal, designee, or district superintendent may extend the timeframes by a reasonable amount of time with written notice to CEF that explains the length of the extension and why the extension is necessary; and

4.      If any of CEF's applications for use of school buildings, facilities, or grounds at Kalihi Waena Elementary School, Nuʻuanu Elementary School, Lincoln Elementary School, or Waimea Elementary School are denied,

whether initially by the school principal or designee or by the district

superintendent on appeal, the relevant decisionmaker must provide CEF a written

denial outlining the specific reasons why the application was denied, with

sufficient particularity to allow scrutiny of whether those reasons are valid.

     E.     This Order will remain in effect until the conclusion of this case or

further order of this Court, whichever occurs first.

     IT IS SO ORDERED.

     DATED:  June 27, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 24-00034 MWJS-WRP; *Child Evangelism Fellowship of Hawaii, Inc. v. Hawaiʻi State Department of Education,* et al.; ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION